J. STERLING DAVIS, PLAINTIFF-APPELLANT, v. WILLIAM
MAGEE, ROBERT MAGEE AND CHARLES FISHMAN,
DEFENDANTS-RESPONDENTS.

Argued October 8, 1941—Decided February 19, 1942.

Before BROGAN, CHIEF JUSTICE, and Justices CASE and
HEHER.

For the appellant, *Davis & Davis* (*James Mercer Davis,*
of counsel).

For the respondents, *David A. Veeder.*

The opinion of the court was delivered by

HEHER, J. The primary question raised by this appeal is
whether the rule barring the adduction of parole evidence to
vary the terms of a written contract was violated in the trial
of the issue joined herein. We think not.

The basic inquiry was as to the contractual relationship
subsisting between plaintiff and defendant William Magee.
The document purporting the contract bears date January
1st, 1937. Thereby plaintiff agreed "to employ" this defend-
ant "for a period of five years to manage the milk and dairy

products business at Seaside Heights and vicinity;" to "furnish all trucks, bottles and other equipment and pay all operating expenses other than salaries for the proper operation of said business;" and to "deliver all milk and dairy products required in the said business" during the summer months. And the defendant stipulated "to faithfully and diligently conduct" that business "for a period of five years;" to "purchase" from plaintiff "all milk and dairy products sold by him * * * at the minimum prices fixed by the Milk Control Board of New Jersey plus a charge of two cents per bottle on milk to pay delivery costs," and pay therefor "within seven days from the date of billing;" and to employ at his own expense all "drivers and helpers needed in the proper conduct of" the business. It is plaintiff's contention that the status of this defendant thereby arising was not that of an "employee," but a "sub-dealer" who had bound himself to purchase from plaintiff the merchandise needed for the transaction of his business.

But the defendant was permitted to testify, over objection, that in the latter part of December, 1936, he and the plaintiff entered into an oral agreement whereby he undertook to "drive a" (milk delivery) "truck" for plaintiff during the summer season for "a commission" of "two cents on each quart of milk" sold; that he immediately commenced work under this arrangement; and that he signed the writing adverted to on or about January 27th, 1937 (during the continuance of his employment), at plaintiff's solicitation and upon his representation that it obligated defendant "not to go with another milk company" after he had "built up a nice trade in Seaside Heights and Seaside Park." The defendant did not read the paper. He explained his act thus: "He [plaintiff] was going to employ me for five years and I thought it was all right, and I didn't know anything about the paper and I signed it. * * * Mr. Davis said the paper was to show I was to work for him for five years and after we had built up a good route in Seaside Park and Seaside Heights I would not go to work for any other milk company." Defendant was a painter by trade and a novice in the milk business. Plaintiff admitted that an oral agreement pre-

existed the writing, but he insisted that the terms were identical. And the defendant testified that there was no change in the "method of operating" after the paper was signed. He was not given "different instructions" thereafter.

All this was evidence admissible to show fraud in the execution of the purported contract within the definition of the controlling adjudications. *McDonald* v. *Central Railroad Co.,* 89 *N. J. L.* 251; *Dunston Lithograph Co.* v. *Borgo,* 84 *Id.* 623; *Alexander* v. *Brogley,* 63 *Id.* 307; *Christie* v. *Lalor,* 116 *Id.* 23. The asserted fraud was not in the inducement to the contract, but a misrepresentation of the contents of the writing. "A misrepresentation of the contents of a document by which one is induced to sign a paper thinking it is other than it really is, is the typical case of fraud in the execution; it is a case where the defrauded party may properly say, 'I never agreed to that, and hence the document is not my deed.'" *McDonald* v. *Central Railroad Co., supra.* There, the view that such fraud was cognizable only in equity was definitely set at rest.

These considerations are dispositive of most of the numerous assignments of error based on rulings on evidence during the course of the trial. The others do not call for specific discussion. Either they concern evidence plainly relevant and material to the issue, or they are not founded on an adequate exception. An exception based on the reception of evidence over objection is inefficacious in the absence of a specific reason for the objection. *Lyon* v. *Fabricant,* 113 *N. J. L.* 62.

Next, it is maintained that there was error in the denial of plaintiff's motion for a directed verdict against the defendant, William Magee, for $1,468.36. The point is not well taken.

If the parties had contracted on the terms affirmed by this defendant, he was not indebted to plaintiff in the sum thus claimed; at least, the *quantum* of the debt was a question for the jury. The former's wife testified that her husband turned over to her "the money collected and the bills," and she delivered all such to plaintiff. The latter conceded that payments had been made to him on behalf of the defendant,

and that the envelopes enclosing them bore notations in the handwriting of his wife. Whether there was fraud in the execution of the purported contract was likewise a factual issue for the jury. And it was open to the jury to find that, even on the hypothesis that the agreement was truly embodied in the writing, the indebtedness was less than that asserted. There is no need to particularize. It suffices to say that plaintiff himself did not adhere to the terms of the writing, particularly as to the price of the milk delivered, and that he did not in fact classify the defendant as a sub-dealer.

Error is also predicated of the admission of certain evidence tending to show fraud in the execution of the purported guarantee of payment made by the two co-defendants, and also of the denial of plaintiff's motion for a directed verdict against these defendants. The guarantee was to "the seller" for "all purchases made from the seller by the buyer."

There is no occasion to consider these assignments, inasmuch as the jury found that the principal was not indebted to plaintiff.

Lastly, error is assigned on the denial of plaintiff's motion for a dismissal of the counter-claim interposed by the defendant William Magee to recover commissions for milk sold by him.

It is said that, apart from the fact that such dismissal would necessarily follow the direction of a verdict for plaintiff, that course was required for the reason that "there was no competent evidence of damages," since there was no proof of the *quantum* of milk sold by this defendant.

There would seem to be a sufficient basis in the proofs for the verdict returned on the counter-claim. But it is unnecessary to consider the question. The motion for a directed verdict was rested upon the single ground that the counter-claim should be dismissed "because upon the theory of the plaintiff's case, there could not be any counter-claim if our contention is correct."

Judgment affirmed, with costs.